## UNITED STATES v. ELM SPRING FARM, Inc., et al.

### Civ. A. No. 1068.

District Court, D. Massachusetts.

March 31, 1941.

On Application for Permanent Injunction
May 1, 1941.

John A. Canavan, Sp. Asst. to Atty. Gen., and John M. Durbin, of Washington, D. C., for United States.

Warren Patten, of Boston, Mass., for Elm Spring Farm, Inc., Francis Cummings, Etta S. Giles and Harry C. Fallis.

David Greer (of Greer, Dalton & Crane), of Boston, Mass., for Howard L. Chisholm and Elm Spring Farm Cooperative.

SWEENEY, District Judge.

The plaintiff seeks a preliminary injunction to restrain the defendant Elm Spring Farm Coöperative (hereinafter referred to as the Cooperative), its officers, agents, servants and attorneys from disposing of, or encumbering, any of the assets of the Cooperative during the pendency of this litigation, except in the regular course of business, and to compel it to comply as a handler of milk with the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq., and Order No. 4, as amended, particularly with reference to making payments to the Market Administrator in accordance with bills rendered to it.

A motion to dismiss has been filed in behalf of the defendants Elm Spring Farm, Inc., Cummings, Giles, Fallis, and Chisholm. As reason therefor the defendants assert that the bill of complaint fails to state a claim upon which relief may be granted against them, and, in the case of Chisholm, the additional ground that the complaint sets forth no ground for recovery at law. In the case of the defendant Elm Spring Farm, Inc., additional grounds for the motion are that defective and improper service was made on it, and that the action

does not include certain necessary and indispensable parties. A motion to strike certain allegations in the bill was also filed by all defendants, with the exception of Chisholm. A claim for a jury trial on the merits has been filed by the defendants. Nothing in this statement is to be construed as deciding that claim, which is specifically reserved to the Judge who will preside at the hearing on the merits. This memorandum is limited to the question of a preliminary injunction and to the motions filed by the defendants set forth above. The effect of granting a preliminary injunction against the defendant Elm Spring Farm Cooperative will be so pronounced in the conduct of its business that the court has held extensive hearings over a period of five days in order that all parties might have an opportunity to present such evidence as they deemed advisable.

The ultimate question to be decided is whether Elm Spring Farm Cooperative is a producer as defined in Order No. 4, as amended, and whether the milk with which the Cooperative deals is its own farm production. If it clearly appears that it is not a producer, and that its milk is not "own farm production", an injunction should issue to compel compliance, as a handler, with the Act and the Order thereunder.

### Findings of Fact.

In order to get a clear picture of the present set-up, it is necessary to review the history of the formation of Elm Spring Farm Cooperative, and its predecessor corporations, to note the persons intimately connected with them, and to take notice of the relations between the predecessor corporations and the plaintiff.

Prior to August 1, 1937, the defendant Etta S. Giles was the sole stockholder of Elm Spring Farm Co., a corporation organized under the laws of Massachusetts. On August 1, 1937, Order No. 4, as amended, became effective. An action was begun by this plaintiff seeking to compel the Elm Spring Farm Co., to comply with the Agricultural Marketing Agreement Act of 1937 and Order No. 4, as amended. A stipulation was filed in that case in which it was agreed that the defendant would be bound by the determination of a similar case then on appeal to the Circuit Court of Appeals for this Circuit. Green Valley Creamery v. United States, 108 F.2d 342. That case was designated United States of America et al., v. Wm. T. Jones Company.

In the Jones case a decree was entered requiring the defendant affirmatively to comply with the provisions of Order No. 4, as amended.

During 1938 and 1939, the defendant Chisholm was the manager of Elm Spring Farm Co. One Julia M. Cummings, wife of the defendant Francis Cummings, together with Chisholm and Giles were its directors. The defendant Cummings, although having no connection with the corporation, was consulted from time to time in an advisory capacity.

In January of 1940, there was talk between the defendants Cummings and Chisholm and their counsel about the possible formation of a corporate cooperative to engage in the production and distribution of milk. On March 16, 1940, the president of Elm Spring Farm Co., was authorized to execute and deliver an option to the defendant Cummings for the sale of all of the assets of that corporation. These had a value of approximately $30,000. This option was never exercised. Thereafter, the defendant Cummings contacted dairymen in the Lyme, New Hampshire, area to ascertain their interest in the cooperative plan.

On May 1, 1940, Elm Spring Farm, Inc., a Massachusetts corporation, was formed. Etta S. Giles was president, the defendant Chisholm was treasurer, and the board of directors consisted of the defendants Chisholm, Giles, and Cummings. At or about that time the board of directors of Elm Spring Farm, Inc., purchased all of the assets of Elm Spring Farm Co., and paid therefor with the stock of Elm Spring Farm, Inc. Etta S. Giles, who was the sole stockholder of Elm Spring Farm Co., then contracted with the defendant Chisholm to sell him one-half of the stock in Elm Spring Farm, Inc., in exchange for a note in the amount of $15,000. Elm Spring Farm, Inc., continued to operate the business as the successor corporation to Elm Spring Farm Co., and so operated until about June 15, 1940.

There is no claim made that either of these predecessor corporations were producers. They were handlers of milk within the meaning of that term as defined in Order No. 4, as amended.

The defendant Cummings, having received favorable response from the dairymen in and around Lyme, New Hampshire, proceeded to incorporate the defendant Elm Spring Farm Cooperative. This

was organized on May 31, 1940, by the defendants Chisholm, Giles, their counsel, and several of their counsel's employees and associates. The purposes of the Cooperative, as set forth, were: "To buy, sell and own dairy cattle and to carry on as a cooperative enterprise business of producing milk, processing, buying and selling milk, cream and any and all other dairy products, and to engage in such activities as may be necessary and convenient in connection therewith."

Plainly, the purpose of forming the Cooperative was to constitute it a producer dealing in its own farm production. As such, it would be exempt from making payments to the Market Administrator.

Having formed the corporation the defendants Chisholm and Cummings then contacted those dairymen in the Lyme area who had signified a willingness to join the Cooperative, and · acquired title to their cows. This was done, first, by agreeing with the dairyman upon the valuation of his particular animals, and, then, securing from the dairyman a bill of sale covering them. As consideration for the bill of sale the Cooperative executed a mortgage to the dairyman to the extent of seventy-five per centum of the valuation of the animals, and made up the additional twenty-five per centum by the issuance to him of stock in the Cooperative. Having title to the animals vested in the Cooperative, .it designated the dairyman as the herd master of the animals concerned in the particular transaction, and worked out an agreement to pay him compensation for his services in the supervision of the herd and production of milk at a rate that was to be determined from time to time. An agreement was also entered into between the Cooperative and the herd master whereby, on the happening of certain contingencies, repurchase of the cows would be made by the herd master at their valuation price. The defendant Chisholm was employed by the Cooperative as its manager and treasurer, and his salary was set at $75 a week. The defendant Giles was elected comptroller at a salary of $75 a week.

On June 16, 1940, an agreement was entered into between the Elm Spring Farm Cooperative and Elm Spring Farm, Inc., whereby the Cooperative leased from Elm Spring Farm, Inc., its equipment and premises located in Waltham, Massachusetts, for an annual rental, later determined, of $7,800 per annum. From then on Elm Spring Farm Cooperative considered itself a producer within the meaning of Order No. 4, as amended, and treated the milk which it handled as its own farm production. From time to time it disclosed to the Market Administrator such information as was available with regard to its set-up.

On November 13, 1940, the Market Administrator notified the Cooperative of his determination that milk reported as its own farm production was milk received from producers and billed the Cooperative under that ruling. It is agreed for the purpose of this hearing that the mathematical computation of the amounts which would be due if the milk was received from other producers as contained in the bills rendered is correct. The Cooperative has paid to the Market Administrator the amounts which it has calculated would have been due if the bills had been properly computed on the basis that the milk produced by the cows to which it had title was milk of its own farm production.

### Discussion.

The sole question before me now is whether Elm Spring Farm Cooperative is a producer, and whether its milk is own farm production.

There can be little doubt that dairymen may band together to form a cooperative association for the purpose of collectively processing and marketing the milk which they produce. The Capper-Volstead Act, 7 U.S.C.A. § 291, specifically states that: "Persons engaged in the production of agricultural products as farmers, planters, ranchmen, dairymen, nut · or fruit growers may act together in associations * * * in collectively processing, preparing for market, handling, and marketing * * * such products of persons so engaged. * * * Provided, however, That such associations are operated for the mutual benefit of the members thereof, as such producers * * *."

But merely naming an association a cooperative one cannot affect its real character. Its make-up and purpose are the real criteria. In the broad conception of the word, a "producer" is any one who produces, generates, or brings forth an article, and, in the case of agricultural products, is one who grows an article or causes it to appear. In the case of milk, a dairyman, caring for and feeding a herd of cattle for their milk, is a producer of milk.

Order No. 4, as amended, says that a producer means "any person who * * * produces milk and distributes * * * milk of his own production". The word "person" according to the Order means "any individual, partnership, corporation, association and any other business unit." Thus, a corporation may be a producer, and its products can be its own farm production.

But, does a corporate handler of milk become a producer by simply forming a new corporation, taking title to the former producers' cattle in the cooperative name, paying therefor partly by mortgage and partly by issuance of stock, and designating the former producers as herdsmen? I do not think so. The change from a handler to a producer can only be commensurate with its changed business. Where the handler's business remains the same, where its method of doing business remains the same, and where the distribution of milk handled by it remains the same, to effect a transition from a handler to a producer requires something more than the passage of a few legal papers and the redesignation of the persons from whom they procure the milk. A dairyman who produces milk remains a producer, even though the title to his cows has left him, and he holds a stock certificate in a cooperative corporation, and is subsequently known as a herdsman. His labor in producing the milk as a herdsman, which he formerly produced as a producer, has not changed in the slightest degree. A change in the paper title to the cattle, his ownership of corporate stock, his new title as a herdsman, in nowise affect his duties to feed and milk the cows regularly.

The Capper-Volstead Act provides that a true association of dairymen can become a corporate cooperative association, but, the right to so associate themselves is limited to farmers, planters, ranchmen, dairymen, and nut and fruit growers. I assume that to accomplish the purpose of their cooperative association such a group may employ managers and other necessary agents to accomplish their objective—collective marketing. The real sense behind such an association and the prime purpose of the persons so banding together is to accomplish a common objective—collective marketing. It is a collection of producers cooperating to sell the goods they have produced. The very purpose of the passage of the Capper-Volstead Act was to guarantee cooperative associations immunity from prosecution under Federal anti-trust laws. It was recognized that combinations, such as those defined, were beneficial to individual producers, and where there was such banding together of dairymen for their own protection there could be little doubt that they would be lawful cooperatives.

But the prime purpose behind the defendant cooperative can hardly be said to have been the association of dairymen for the purpose of collective marketing. Prior to the formation of this cooperative, the defendant Giles, through the medium of the predecessor corporations, was engaged in the business of handling milk which was bought from producers. In Elm Spring Farm Co., she was the sole stockholder. In Elm Spring Farm, Inc., she owned fifty per centum of the stock, and held a lien on the other fifty per centum to guarantee Chisholm's payment to her. Both of these corporations were handlers of milk within the definition of the Act. The prime purpose of this set-up was a better marketing arrangement for the handler and its backers, and the dairymen, as herdsmen, were brought into the picture to give the set-up the color of a producer rather than a handler. The plan adopted was ingenious but transparent. The character and true nature of Elm Spring Farm Cooperative was inherited from its predecessor corporations. The method of doing business and distributing their products remained the same.

This opinion is not intended to indicate, because of her prior designation as a handler, that Etta Giles could not qualify under the Act as a producer. To do so, however, would compel a much more radical change than a mere title-passing, paper transaction, and the introduction into a corporation of some producers of milk who, incident to the new arrangement, became stockholders in the new cooperative corporation.

### Conclusion of Law.

I therefore find and rule for the purpose of passing on the application for a preliminary injunction that Elm Spring Farm Cooperative is not a producer within the meaning of Order No. 4, as amended, and that the milk which it handles is not its own farm production in so far as it procures it from its so-called herdsmen. I also find and rule that Elm Spring Farm

Cooperative is a handler of milk within the meaning of Order No. 4, as amended.

For that reason a preliminary injunction should issue to compel compliance with the Agricultural Marketing Agreement Act of 1937 and Order No. 4, as amended, during the pendency of this action.

The motions to dismiss filed in behalf of the defendants Fallis, Cummings, and Chisholm are allowed. No relief is sought against them as individuals in the bill, nor does it appear from the evidence that any relief against the individuals could be granted. The motions to dismiss as to Elm Spring Farm, Inc., and the defendant Etta S. Giles are denied. The bill should be retained against these defendants in order to give full effect to the injunction which is to be issued. The motions to strike are also denied.

A preliminary injunction is to issue, pending the further order of this court:

(A) Enjoining the defendant Elm Spring Farm Cooperative, its agents, officers, servants, or attorneys from: .

(1) Paying over to the defendant Elm Spring Farm, Inc., as rent or otherwise any of its assets.

(2) Paying over to Etta S. Giles as salary or otherwise any of its assets.

(3) Reselling or in any manner causing the resale of cows whose title stands in its name or in any manner encumbering its assets.

(4) Repurchasing from its stockholders any shares of stock in said Cooperative.

(5) Disposing of, or encumbering, any of its assets, except in the regular and usual course of business.

(6) Paying to its members or to those from whom it procures its milk any sort of consideration for the milk so procured which would be in excess of the amount due said persons if the pounds of milk procured were multiplied by the price announced by the Market Administrator adjusted for butterfat content and other differentials for milk delivered by regular producers to a plant located in the sixteenth zone.

(B) Enjoining the defendant Elm Spring Farm, Inc., and its officers, agents, or attorneys from:

(1) Paying or turning over any of its assets to the defendant Giles, or in any manner disposing of its assets, except in the regular and usual course of business, or in any manner encumbering its assets.

(2) Seeking to enforce the terms of the rental contract of June 16, 1940, against the defendant Elm Spring Farm Cooperative, and from receiving anything as rent or otherwise from the Elm Spring Farm Cooperative.

(C) Ordering the defendant Elm Spring Farm Cooperative:

(1) To pay to the Market Administrator forthwith the sums due the Market Administrator in accordance with the bills rendered by him which have been stipulated to be mathematically correct.

(D) Ordering the defendant Elm Spring Farm Cooperative, its agents, officers, and servants:

(1) To comply, as a handler, with the provisions of the Agricultural Marketing Agreement Act of 1937 and Order No. 4, as amended.

On Application for Permanent Injunction.

When this action was before me on the plaintiff's prayer for a preliminary injunction hearings were held over a period of five days in order to give all parties full opportunity to present such evidence as they desired, because I realized that the issuance of even a preliminary injunction would have a far reaching and drastic effect on the defendants' businesses. On March 31, 1941, I filed a memorandum setting forth at length my findings of fact and conclusions of law, and ordered the issuance of a preliminary injunction.

Since that time the parties have filed in court a stipulation waiving their claim to a jury trial and submitting "the suit for the consideration and determination of the Court upon the pleadings and upon the evidence introduced at the hearing on the preliminary injunction and the motions to dismiss" without waiving certain rights and objections as will appear more fully in the stipulation.

No useful purpose would be served by here repeating the findings of fact and conclusions of law set forth in the memorandum of March 31, 1941. I therefore adopt them and incorporate them into this opinion as an intended compliance with Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Conclusions of Law.

■ For the purpose of passing on the application for a permanent injunction, I

find and rule that Elm Spring Farm Cooperative is not a producer within the meaning of Order No. 4, as amended, and that the milk which it handles is not its own farm production in so far as it procures it from its so-called herdsmen. I also find and rule that Elm Spring Farm Cooperative is a handler of milk within the meaning of Order No. 4, as amended.

A permanent injunction is to issue as prayed for by the plaintiff, but is to be limited to the specific acts or omissions by which the defendants have not been in compliance with the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq., and Order No. 4, as amended. A decree may be submitted in accordance with the above.